## MURPHY *v.* EAST PORTLAND *et al.*

*(Circuit Court, D. Oregon.    June 9, 1890.)*

1. MUNICIPAL CORPORATIONS—FISCAL MANAGEMENT—INDEBTEDNESS—ORDINANCE.
   An ordinance of a municipal corporation, which provides for the payment of money by the town without providing the means wherewith to make such payment, creates an indebtedness against such corporation, within the meaning of section 5, art. 11, of the constitution of the state.

2. SAME—INJUNCTION OF LEGISLATIVE ACT.
   A court of equity will not enjoin a municipal corporation in the exercise of its legislative function, unless the proposed act is beyond the scope of its power, and its passage would work irreparable injury.

3. SAME—INJUNCTION OF ORDINANCE CREATING INDEBTEDNESS—TAXES—JURISDICTIONAL AMOUNT.
   In a suit by a tax-payer to enjoin the passage of an ordinance creating an indebtedness against the town on account of its alleged illegality, the matter in dispute is the sum of the taxes which the plaintiff would probably have to pay in discharge of said indebtedness; and it must appear with reasonable certainty from the facts stated in the bill that such taxes exceed in value the sum of $2,000.

*(Syllabus by the Court.)*

In Equity.
*Charles H. Carey* and *Paul R. Deady*, for plaintiff.
*Alfred F. Sears, Jr.*, for defendants.

DEADY, J.    This suit is brought by the plaintiff, a citizen of Washington, to enjoin the defendants, the municipal corporation of East Portland, the mayor and common council of the same, and the Oregon corporation, the East Side Water Company, from passing a certain ordinance, now pending before said council.

It is alleged in the bill that the plaintiff is the owner of a tract of land within the limits of the town of East Portland, assessed therein at

$5,600, upon which municipal taxes for the year 1890 were levied to the amount of $42.00; that the act incorporating said town provides "that no debt shall ever be created against the same exceeding in amount the sum of $25,000," (Sess. Laws 1885, p. 308,) which amount is now incurred; that said town is authorized to levy taxes on the property therein for all purposes at a rate not exceeding 17-20 of 1 per centum; that there is now pending before said council an ordinance granting the defendant, the water company, the right to lay water-pipes in the streets of the town, and furnish water to the inhabitants thereof, which also provides for the making of a contract between said town and said water company, whereby the latter is to furnish the former with water for public use, for 10 years, at the rate of $200 a month, and for the purchase of said works by the town, within 90 days after it is authorized so to do by the legislative assembly, whereby an indebtedness will be created against said town exceeding the sum of $25,000, for the payment of which the taxes levied on the plaintiff's property would exceed in amount the sum of $2,500, in satisfaction of which, said property may be levied on and sold on the warrant of the town, as upon an execution.

The defendants demur to the bill, objecting that the court has not jurisdiction of the subject of the suit.

On the hearing it was also assigned, as a cause of demurrer, that equity will not interfere to prevent legislative action by a municipal corporation.

It is admitted that the promise or undertaking provided for in the ordinance in question will, if formally made or entered into, create a debt against the town for the sum of $24,000.

Section 5, art. 11, of the constitution of the state provides: "Acts of legislative assembly, incorporating towns and cities, shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."

In pursuance of this injunction the power of the town to create a debt is limited by its charter to $25,000, which amount is already incurred.

In *Water Co.* v. *Salem*, 5 Or. 29, the supreme court of the state held that an agreement to pay the plaintiff $1,800 a year for 17 years, without any provision being made for the payment of the same as it became due, necessarily created a debt against the defendant, within the meaning of the constitution. It did not, however, decide what would be the effect if the ordinance authorizing such agreement also provided the means for the payment of the indebtedness when and as it became due.

In *Coulson* v. *Portland*, Deady, 481, held that an ordinance whereby the defendant assumed the payment of the interest coupons, amounting to $350,000, of the bonds of the Oregon Central Railway Company, created a debt within the meaning of the constitution, although provision was made therein for the levy of taxes to pay such coupons as they became due.

It appearing from the bill that the existing indebtedness of the town has reached the limit prescribed by its charter, the additional $24,000

contemplated by this ordinance, there being no provision made for its payment, is clearly illegal and void.

Whether the town could, under the restraint imposed on its power of taxation, by subdivision 2, § 2, art. 4, of its charter, (Sess. Laws 1887, p. 202,) levy a tax sufficient to pay such indebtedness, as it becomes due, is a question. · It could only be done under the levy for the "general fund," which is limited to one-fourth of 1 per centum.

The authorities are not uniform on the question of the power of a court of equity to restrain a municipal corporation in the exercise of its legislative functions. The more modern, and, I think, the better doctrine is, that the court ought not to interfere by injunction with legislative action of a municipal corporation, unless the proposed legislation is beyond the scope of the corporate power, and its passage would, under the circumstances, work irreparable injury. After the passage of such an ordinance, its enforcement, if attended with such injury, may be enjoined. *Coulson* v. *Portland,* Deady, 492; *Water-Works* v. *Bartlett,* 8 Sawy. 555, 16 Fed. Rep. 615; *Alpers* v. *City and County of San Francisco,* 12 Sawy. 631, 32 Fed. Rep. 503; High, Inj. § 1243.

· In the abstract the passage of this ordinance is not beyond the power of the town. By subdivision 7, § 2, of its charter, (Sess. Laws ·1887, p.·203,) it is authorized "to provide the city with good and wholesome water," and the cost of this scheme does not exceed the limit of indebtedness prescribed by the charter.

But owing to the existing state of its indebtedness, the town is, for the time being, prohibited, incapacitated, from passing any ordinance on any subject which will increase the same. ·

But I do not perceive how the mere passage of this ordinance can work irreparable injury to any one. It does not execute itself. Indeed, it may never be passed. But if it is, and an attempt is made to enforce it, by entering into the contract with the water company, as provided therein, or by levying or collecting a tax to pay the indebtedness thereby created, any one so injured may have the officers charged with or attempting such enforcement enjoined.

Neither does it appear that "the matter in dispute" exceeds in value the sum of $2,000.

It is true, it is so alleged in the bill, but the facts stated therein do not warrant the assertion.

For instance, it is stated that the additional and illegal taxes which the plaintiff will be compelled to pay on her property to meet the assessed expense, of the proposed water supply, together with the purchase of "the water-works system," will exceed in 10 years the sum of $2,500. ' But the purchase of the plant of the water company is only proposed by the ordinance, and on the condition that the town shall receive the proper authority from the legislature; and then, and in that event, the purchase will be valid. ·

"The matter in dispute" is the right of the town, by means of this ordinance, to create an indebtedness of $24,000, payable in installments of $200 per month, and thereby subject the plaintiff's property to the

payment of its share of the tax necessary for this purpose. And the value of such "matter" to the parties to the suit is the value or amount of the taxes which would be levied on the plaintiff's property in case the ordinance should be passed and enforced.

The burden is on the plaintiff to allege and prove that these taxes would exceed in value the sum of $2,000. Beyond the bare assertion that this "value" does exceed $2,000, the bill is a blank on the subject. It appears that the property now pays for all taxes levied under the charter—for the "general fund," "street repairing," "fire purposes," and "payment of indebtedness"—the sum of $42. In 10 years this would amount to $420. Would the water-tax amount to more or less? On the facts stated in the bill no one can say. Such tax would have to be about five times the sum of all the taxes now levied on the property to give this court jurisdiction, on account of the value of the "matter in dispute." It is not at all probable that it would amount to so much. But, be that as it may, it must appear with reasonable certainty from the facts stated in the bill that the matter in dispute exceeds the value of $2,000; and this "matter" is not the ordinance, nor the property of the plaintiff, but the sum of the taxes which the plaintiff might have to pay on account of such property by reason of such ordinance.

If it appeared from the bill what rate levied upon the property now on the assessment roll of the town would be necessary to raise this water-tax, it would be a simple matter of calculation to ascertain how much of this tax the plaintiff would be required to pay. If one-fourth of 1 per centum was the rate, the plaintiff would be required to pay $14 per annum, which would make the value of the matter in dispute in this suit not to exceed $140; and the strong probability is that as the town increases in wealth and population, and real property increases in value, the tax would diminish rather than increase.

The demurrer is sustained.